The second appeal we will hear this morning is Ben Baker v. FBI. Mr. Topic. Good morning, Your Honors. May it please the Court. This is a Freedom of Information Act case. At issue in this case is disclosure of the names of people in the FBI's investigative files related to Ronald Watts and other Chicago Police Department officers who are alleged to have engaged in an extortion and framing of innocent people scheme. According to the government itself, Watts engaged in years of criminal activity at the expense of the city's most vulnerable population, yet he was charged with only a single count of shaking down an FBI informant. According to testimony from other officers, there were additional officers who were involved in Watts' enterprise but were never charged at all. What standard of review are we applying here? Yes, and I realized in horror yesterday as I was preparing, we didn't address that in our opening brief, so I apologize. The government's articulation of the standard of review is correct. So the first question is a de novo review of whether there was an adequate factual basis for the exemptions that were being claimed. If you conclude that there was, then it's a clear error review for the conclusion of whether those factual bases apply to the exemptions here. So let me ask you this, what are you expecting to learn or in what way is this very personal identifying information about the federal and state officials who were involved with this going to be pertinent to anything? We know about Watts, right? He's in prison. We actually know about Khalat Mohamed as well. So what do you care about their birth dates or their social security numbers or their home addresses or all of those kinds of things? So we don't dispute that information. The categories of information that we're challenging here are, first and foremost, the identity of the other Chicago Police Department officers who were investigated but weren't charged. I believe that's Watts page 129 in the records that had been submitted. Now, can I ask you whether, because there's some talk about privacy interests under the Illinois statutory regimes. This is a federal Freedom of Information Act case. Are the standards the same under the Illinois equivalent? I mean, the idea that you're going to reveal the names of all the people who were investigated but not pursued is a little troubling to me. But you claim that there's no privacy interest at all in anything you do as an employee of an entity of the state of Illinois. So I want to know how state law and federal law interact here. Sure, and there's two pieces. There's the privacy interest and the public interest in disclosure. So we're not arguing that Illinois law governs how you do the analysis of balancing the privacy versus the public interest in disclosure. Clearly, federal FOIA law is what applies here. But the first question is... But why wouldn't you have sued in state court if you thought Illinois was better for you? Well, that doesn't necessarily mean that any Illinois public body has the same records that the FBI does, and very likely they wouldn't. So under Illinois law, an Illinois public official, when they take employment as an Illinois public official, do so with the understanding that under Illinois law there is no expectation of privacy on things that bear on their public duties. That's established in the FOIA statute. That's also established in Illinois case law and right of privacy. And we cited some of those cases. Cassidy is the one that addresses it as a common law point. Does that include phone numbers? So phone numbers are subject to a separate exemption under Illinois FOIA. So, again, we're not interested in phone numbers. What I'm saying is Illinois doesn't, it's not entirely true because phone numbers aren't or shouldn't be, I guess, available. That's correct, yes. Home phone numbers, there would clearly be a privacy interest and there would be no real public interest in having that disclosed. So what we're really focused on is the names of the officers who were investigated. All right, so I want to know a little bit about precedent. I can't recall reading in the newspaper, but it doesn't mean that it hasn't happened. Reading a story to the effect of there's been a FOIA disclosure from fill in the blank, you know, the FBI or the Illinois State Police or anybody else, in which we're going to list the names of all the people that we decided to investigate for a particular crime, whether it's an extortion racket or whether it's a drug conspiracy or some kind of Medicare fraud or whatever else. And pick your crime. I can't recall sitting there and reading, we looked at John Smith and decided not to pursue charges against him, and we looked at Susie Jones and we decided not to pursue charges against her. Having been in the Justice Department, we didn't publicize things like that. You know, if you looked into somebody and you decided not to go forward, then in the interest of the person who was now not going to be dragged through the criminal system, you didn't disclose it. So do you have any precedents for cases where this sort of thing has been disclosed? So as to the people who had been investigated? Yeah, the ones who were investigated. Because your theory, obviously, is that the fact that only Watts and Muhammad get this and they have actually rather light sentences, in your view, there must be something else bad going on. But, I mean, I can actually think of reasons why they may have gotten the light sentences and reasons why the prosecutor, looking at the evidence from the FBI, might have decided not to pursue charges. It wasn't the FBI's decision anyway. Well, the standard under the Favish Supreme Court test is, you know, not whether we have proven conclusively that there was government impropriety. The test is whether we've come forward with evidence that would warn a belief by a reasonable person that government impropriety might have occurred in the course of the investigation. But your theory of impropriety is that there was evidence that X was involved with the protection payment scheme and that the U.S. attorney, having learned from the FBI that X was involved in the extortion scheme, decided not to bring charges. No, there could be, we think, really two explanations for why the additional people weren't charged or why Watts was not charged with more counts. And our issue isn't with the sentence, it's that he was charged with one count when the government said there were years of this illegal conduct by Watts and his crew. And so one explanation is that there was sufficient evidence that was gathered by the FBI and the U.S. attorney's office nonetheless decided not to charge, despite both... And under what theory would we have a lawsuit against the U.S. attorney for not charging somebody? I mean, courts don't require the U.S. attorney to bring charges. Well, to go back to the standard and Favich, the question isn't whether there's evidence of illegal behavior by the government or whether the government was legally obligated to do something. It didn't. It can include whether there was negligence. So one explanation could be... But what's your lawsuit look like? So you sue somebody for negligence? I don't understand. There doesn't need to be a lawsuit. It's simply a matter of public interest in the public determining for itself whether its public officials, whether the FBI, did the best, most thorough, non-negligent job in investigating other law enforcement agencies. So suppose, this is a complete hypothetical on my part because I don't have any idea what went on behind this, but suppose the government decided to charge Watts, as it did, with just the one charge because it has a private agreement with Watts to furnish information over the years. I mean, that's been known to happen. And it wouldn't necessarily be public for a whole lot of reasons, but when courts start digging into this and start requiring the publication of lists of people who didn't get charged with enough or people who were investigated but not charged, I can see significant harm to the government's interests. Well, I would say that all those issues are addressed in the standard that's put forth in FABISH. And if the requester can come forward with enough evidence to warrant that reasonable belief that government propriety might have occurred because we have a pro-disclosure Freedom of Information Act because the entire purpose of it is to allow people to hold the government accountable, we get to second-guess those decisions. And we get to have the information that allows us to question whether the government acted in a proper fashion. We don't get to just throw out bare suspicion, which is the standard that was rejected. We don't believe that we have done that. Okay. Thank you. You'll have about a minute. Ms. North. May it please the Court, Counsel, there is not one shred of evidence here of any federal government misconduct. But let's back up for a minute because, as I understand what Mr. Topic said, this is a narrower request than I had understood it to be at some point, that it's really not the names and identifying information at the degree of granularity I was thinking about, but in a sense it's just the names of the people who were investigated but not charged. And I don't know. I mean, can you think of an example where that sort of information has been made public pursuant to a Freedom of Information Act request? No, Your Honor. And the interests under Exemption 7C, these privacy interests that are protected, you can find in lots of places in the criminal justice system. For example, grand jury secrecy. People who are investigated or even brought before a grand jury and charges aren't, no indictment is issued, they're protected. And these interests are important. These individuals obviously have huge interests in not having it out there that the federal government was looking at them when ultimately they weren't charged. But what could overcome that interest? B-7 doesn't say that you can never reveal information compiled for law enforcement purposes. It's a more nuanced provision than that. You can withhold it only to the extent that there's an unwarranted invasion of personal privacy. But I'm having trouble thinking under your rationale of any case in which revealing a name wouldn't yield the results that you're worried about, harassment, revenge, obliquity of some type or another. So where do you think B-7 does allow disclosure? Well, under the Supreme Court's decision in Favish, they asked for sufficient evidence. And why isn't this sufficient? I mean, you can use these words, they're kind of weaselly words, aren't they? Sure, because here there is no evidence. There's nothing more than bare suspicion. What is connected here are statements made at sentencing of relevant conduct, which is allowed under the sentencing guidelines, is regularly used, and doesn't raise any sort of inference that there was a problem in the investigation. Well, I'm not sure I agree with that because this is a case where the record of the sentencing, I mean, of course it's relevant conduct, but the record shows that this is a vast, multi-year protection racket that's going on, masterminded and headed by Watts, but the idea that there's nobody else involved is a little difficult to swallow. So there's a description of the criminal activity and some time frame, some scope frame, and yet you're saying even with that much of a description, we still don't think there's enough. It's not like you came in and said, we think the Chicago Police Department, we think the FBI is a terrible organization. Give us everybody's names so we can find out if they did something wrong. That's not this case. Your Honor, I think it's pretty close to it. I mean, this is a— Not really. It's the Watts protection racket in Chicago about drugs. Right, but what Mr. Baker has to show is not that Watts was a bad guy or there was— That seems well established, actually. Right, right, and he pled guilty. He was prosecuted and pled guilty. He was sentenced to almost two years. But what he has to show is that there was some federal government misconduct here because the privacy interest is in law enforcement records of the federal government. It is in the individuals who are named in that investigation. Why is it misconduct? I mean, he's saying that, you know, if you disclose these names, maybe what we would discover rather than what I would think of as misconduct is just laziness, for example. Or, you know, we've put this case against Watts together. That's enough. We're tired of this, you know. Or perhaps just a different priority. Who knows? So I'm not sure that he's looking only for misconduct. Well, if that was the idea, anytime somebody had relevant conduct at sentencing that was outside of what the charges were in the case, which is often, then somebody would be able to say, FOIA Exemption 7C doesn't count. I get all of the names of everybody who was looked at. I get all of the names of all the police officers who helped in the investigation, which in the brief was something they were still looking for, which, you know, they have their own privacy interests here also. And, you know, because of this fact that there's relevant conduct that's greater than the charges, well, we should be able to Monday morning quarterback what. It's second guessing what you should have done. Exactly. It's their opinion that you should have charged more people. They don't show any negligence or any criminal conduct. Correct. On behalf of the agency. Correct. Yeah, I would just say that I think there, in some instances, that relevant conduct would be activity that the defendant could have done with the assistance of the various people who are involved in the charges that are already brought. In other instances, the relevant conduct or other information, such as here, might just strongly imply that there are other people that the government hasn't, for one reason or another, gone after. And there are lots of reasons that have nothing to do with government negligence or misconduct for why charges are brought. I mean, this is sort of speculation on the one side, but there's plenty of speculation on the other side. I mean, witnesses could provide helpful information but have lied about other things, so they're not people that you're going to put on the stand, especially in the context of the narcotics work Watts was doing. Witnesses could be on drugs, could be drug addicts, drug dealers.  Witnesses could also be people who are difficult to find, people who are incarcerated. Conduct could be outside the statute of limitations, or it could have been presented to a grand jury and they could have declined to indict. I mean, there are all sorts of reasons, if you're going to start speculating about why charges weren't brought, that can happen that have nothing to do with negligence, misconduct by the federal government. So I still don't understand how your position differs from just a blanket exemption for records or information compiled for law enforcement purposes. Because the records were provided. I mean, the 5,818 pages were provided. We're talking about redactions of names in 63 pages. And I think possibly now... 736 pages, right? 63 pages are at issue. Right, that's right. Right. But I think now it's probably the redactions aren't even on 63 of the pages because there was some more nuance that happened along the way. But we were literally just talking about names. What was raised in the brief were names of federal agents, names of CPD officers who helped the federal agents. Isn't this really an effort to cause non-elected public officials to take some course of action? In other words, you elect prosecutors in Cook County. You don't elect the U.S. attorney. And by and large, the FBI has no political interest. So you can take action in the state courts, in the state system, and push a prosecutor to do something. In other words, make this an issue in an election. But you can't do that in the federal side. Isn't that really what we're talking about here? I don't really know what their purpose is. And under FOIA, it's sort of neither here nor there. Isn't that a – well, I won't ask you for the possibility. But that seems to me to be a possibility. It may well be. Whatever their purpose is in getting the information is a bit of a – It's second-guessing. We know how this should have come out because the FBI was lazy and should have – was negligent, rather, and should have done more. And therefore, we'd had more than one person in charge. I agree that that is the position that they're putting forward in their brief. That does not meet the FAVISH standard. They needed to put forward something about one of these agents having done something wrong or their having been in a disconnect between reports or something. I mean, they have the records. Well, that burden comes in as part of the balancing, I take it, is your view. I mean, because you say the Freedom of Information Act is just there. It's a government policy toward disclosure of information. Then you can withhold some information, but the withholding can be overcome after the balancing, right? In FAVISH, it actually says you don't – there's not even anything on the scale to begin the balancing until they provide that evidence. Mm-hmm. Okay. And I do also just want to respond very briefly to the point about the names of the individuals who were being investigated and their privacy interests here because they're quite serious. The brief by the appellate even mentioned a whistleblower suit, which is outside of the record, but was mentioned in the brief, of individuals who helped in the investigation and then it is alleged were retaliated against. I mean, their own brief shows how serious the privacy interests are of people who participated, helped in the investigation, and people who were investigated at the time. And if the Court has no further questions, the FBI asks that this Court affirm. Thank you. All right. Apparently not. Thank you very much. Mr. Topic, I think you have about a minute. Thank you. First, I would point just to our 56.1 statement and the things that are attached to it, which is more than just speculation about whether there was evidence against other officers that had been ignored. That includes a declaration by another Chicago Police Department officer about knowledge of other officers being involved. So the question then becomes under Favish, is that enough to raise a question to warn a belief by a reasonable person that there might have been impropriety in the Watts investigation? There still has been no explanation provided, certainly by their affiant, as to then why? Then why weren't more people charged? Well, it gets back to what I just asked, the same question. You've got a nonpolitical U.S. attorney versus a state prosecutor. You can put the pressure on the state prosecutor to do it, but you can't do the same thing for the federal. And now you're trying to go around it by using FOIA to say we're going to really put the pressure on you. Well, the point of the Freedom of Information Act is that the public has the right to this information, and they can certainly assert to the federal government itself, why didn't this happen, why didn't you do this, why didn't you do that? That's the very purpose of the Freedom of Information Act. All right. Thank you very much, Mr. Topic. Thanks to both counsel. Case under advisement.